**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| PAMELA ROLAND<br>*as administrator of the estate of*<br>KEIONTAY DAVIS, et al.<br><br>　　　Plaintiffs,<br><br>v.<br><br>WINGATE MANAGEMENT<br>COMPANY, LLC,<br><br>　　　Defendant. | Civil Action Nos.<br>1:22-cv-001692-VMC<br>1:22-cv-001693-VMC<br>1:22-cv-001694-VMC<br>1:22-cv-001695-VMC<br>1:22-cv-001696-VMC |

**ORDER**

These five civil actions[1] are before the Court on Defendant Wingate

Management Company, LLC's ("Wingate") Motion to Consolidate Cases filed in

each of the cases (the "Motions"). The Court, in a February 5, 2026 Order, provided

a brief factual background of the cases, which the Court incorporates here.

As the Court noted in that Order, after the close of discovery and the

issuance of the Court's summary judgment order, Defendant moved to

consolidate the cases. Defendant argued that the cases "stem from the same

---

[1] The cases are *Roland v. Wingate Management Company*, LLC, No. 1:22-cv-01692-VMC; *Long v. Wingate Management Company, LLC*, No. 1:22-cv-01693-VMC; *Newton v. Wingate Management Company*, LLC, No. 1:22-cv-01694-VMC; *Phillips v. Wingate Management Company, LLC*, No. 1:22-cv-01695-VMC; and *Sims v. Wingate Management Company, LLC*, No. 1:22-cv-01696-VMC.

incident and bring largely the same claims on behalf of all Plaintiffs," and that the "evidence and argument regarding the facts of the shooting, Wingate's management of the premises, and the security measures in place, as well as any evidence or argument regarding attorneys' fees and punitive damages, will be identical across all five cases." In light of this overlap, it argues, judicial economy would be served by litigating all the cases together.

### Legal Standard

"Under Federal Rule of Civil Procedure 42(a), a district court may consolidate multiple actions that 'involve a common question of law or fact.'" *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). The Court's decision on "whether to consolidate is 'purely discretionary.'" *Id.* (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). The Court must consider:

> Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Hendrix*, 776 F.2d at 1495). "Moreover, 'the court must also bear in mind the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury

2

during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation.'" *Id.* at 1313–14 (quoting *Hendrix*, 776 F.2d at 1495) (alterations adopted). "A joint trial is appropriate where there is clearly substantial overlap in the issues, facts, evidence, and witnesses required for claims against multiple defendants." *Id.* at 1314 (quoting *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016)). "But 'where prejudice to rights of the parties obviously results from the order of consolidation, the action of the trial judge has been held reversible error.'" *Id.* (quoting *Dupont v. S. Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966) (alterations adopted). That said, "[d]istrict court judges in this circuit have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* (quoting *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995)).

## Discussion

There is no question that Plaintiffs' cases raise common issues of law (Georgia law of premises liability for third party criminal acts) and of fact (Wingate's duty of care/breach). The question then is whether the Court should exercise its discretion to consolidate.

Several factors weigh in favor of consolidation. The evidence necessary to establish Wingate's knowledge of the allegedly dangerous conditions and the

steps that it took to secure the premises will be established through identical fact witnesses and evidence. The parties have also retained experts on the subject who will likely provide identical testimony in each case. Finally, in the event of consolidation, evidence regarding punitive damages and attorney's fees will be identical.

Plaintiffs make two sets of arguments against consolidation: one practical and one ethical. The Court first considers the ethics arguments. Plaintiffs have argued that a consolidated trial on the issue of Plaintiffs' statuses at Bedford Pines would prejudice Plaintiffs because it would create ethical conflicts for their counsel under Rules 1.3 and 1.7 of the Georgia Rules of Professional Conduct, because counsel would have to compare the merits of the cases and argue that some cases are stronger than others. In response, the Court indicated that it does not view Plaintiffs' counsel's concerns as posing ethical implications, but noted that to the extent the Court is wrong, and Plaintiffs' counsel may be conflicted at a consolidated trial, counsel would likely be laboring under such a conflict even absent consolidation.

Plaintiffs retained the services of Professor Clark Cunningham to opine on whether a conflict presently exists and if not whether consolidation would pose such a conflict. The Court has reviewed Professor Cunningham's opinion and

4

adheres to its earlier tentative ruling that no non-waivable conflict is posed by Plaintiffs' joint representation.

"A potential for conflict evitably arises whenever an attorney undertakes the representation of multiple plaintiffs each seeking the same prize." *Herron v. Chisolm*, No. 4:12-cv-00041, 2012 WL 6645643, at *2 (S.D. Ga. Dec. 19, 2012). But "the professional conduct rules contemplate that the parties represented by an attorney facing such a conflict may give their informed consent to continue with counsel "notwithstanding a significant risk of material and adverse" consequences posed by the joint representation." *Id.* (quoting Ga. R. of Pro. Conduct 1.7(b)). "Such client consent, however, is not permissible in 'circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.'" *Id.* (quoting Ga. R. of Pro. Conduct 1.7(c)). Stated another way, "client consent should not be sought by a lawyer facing a potential conflict 'when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances . . . ." *Id.* (quoting Ga. R. of Pro. Conduct 1.7 cmt 5). "The conflict rule, therefore, contemplates a contextual approach in assessing whether the particular conflict of interest is so momentous that no lawyer would seek or accept the client's consent to the joint representation." *Id.*

Representing differently situated plaintiffs against the same defendant can pose complications. For example, in the settlement context, the pressure to achieve a global settlement can pit the interests of clients with stronger claims against those with weaker claims. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) ("The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."). But with proper safeguards, courts frequently permit such cases to proceed.

For example, in *Herron*, multiple plaintiffs argued that an employer "unlawfully refused to consider them for [a] position because they were female, despite the fact that they were each more qualified for the position than" the male candidate who received the job. 2012 WL 6645643, at *1. The plaintiffs proposed to apportion the damages if they prevailed, but the employer argued that "[s]ince the pot is necessarily limited . . . if one plaintiff was more deserving than the others to win the job, [counsel] would be unable to advocate on behalf of the most qualified applicant without compromising her duty of loyalty to her other clients." *Id.* In other words, the clients "should not be forced to seek a *pro rata* share . . . when one of them may have been entitled to full recovery." *Id.* The court declined to disqualify counsel, however, finding that "[a]bsent some evidentiary showing that these plaintiffs stand on substantially different footing from each other i.e., that

6

one was more likely to obtain the job than the other two *pro rata* distribution would appear to be warranted in this case." *Id.* at *3.

The case for a conflict here is even more attenuated. There is no allegation of a limited fund, and while the trespass allegations and proffered criminal history for Plaintiffs Newton and Long would present unique issues for those two defendants, a reasonable jury could still find that all five plaintiffs are entitled to recover the full amount of their damages. The Court thus does not find that Plaintiffs' joint representation, at present or at trial, poses a non-waivable conflict.

However, upon further consideration, the Court agrees that Plaintiffs' practical concerns do present logistical issues which weigh against consolidation of all five trials. The Court is reminded of another multi-plaintiff personal injury case, *W.K. et al v. Red Roof Inns, Inc.*, No. 1:20-cv-05263. In that case, as here, the plaintiffs were differently situated as to knowledge, background, and damages, which led to frequent delays and arguments made outside the presence of the jury.[2]

Here, the Court finds that combining all five Plaintiffs' cases into one would lead to similar delays and logistical issues. The Court can anticipate the need to repeatedly excuse the jurors when matters of criminal histories of some but not all Plaintiffs are offered, and the need for complex limiting instructions in the event

---

[2] The case was ultimately settled during the defendants' case in chief.

the histories are admitted. Based on the Court's experience, having each Plaintiff put on separate evidence of their damages alone will consume a significant amount of time. Finally, with a different duty of care allegedly owed to some but not all of the Plaintiffs, the Court foresees the potential for juror confusion and difficulties with preparing jury instructions and the verdict form. In sum, Plaintiffs' proposal to divide the Plaintiffs into two or more trials makes practical and logistical sense even if it is not a perfect solution.[3]

## Conclusion

For the above reasons, Defendant's Motions to Consolidate in the above-styled cases are **GRANTED IN PART**. The following cases are **CONSOLIDATED** for trial purposes only:

- *Roland v. Wingate Management Company*, LLC, No. 1:22-cv-01692-VMC;

- *Phillips v. Wingate Management Company, LLC*, No. 1:22-cv-01695-VMC; and

- *Sims v. Wingate Management Company, LLC*, No. 1:22-cv-01696-VMC.

*Roland*, No. 1:22-cv-01692-VMC is designated the lead case. All future filings related to the consolidated trial shall be made in *Roland* only. As consolidation is for trial only, the Clerk shall maintain separate dockets for *Phillips*, No. 1:22-cv-

---

[3] Plaintiffs' counsel has indicated that he likely could obtain informed consent under Rule 1.7(b) from Plaintiffs Newton and Long for a trial involving those two Plaintiffs.

01695-VMC and *Sims*, No. 1:22-cv-01696-VMC but shall notate on those dockets that filings related to the trial of those cases can be found in Case No. 1:22-cv-01692-VMC.

The following cases are **STAYED** pending the outcome of the consolidated trial:

- *Long v. Wingate Management Company, LLC*, No. 1:22-cv-01693-VMC; and

- *Newton v. Wingate Management Company*, LLC, No. 1:22-cv-01694-VMC.

It is **FURTHER ORDERED** that the parties to the consolidated trial are **DIRECTED** to contact the Court's courtroom deputy by Friday, April 24, 2026 with their availability during the week of May 4 for a telephonic status conference to discuss pretrial deadlines**.**

It is **FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that, in *Roland*, No. 1:22-cv-01692-VMC, the Court will hold a final pretrial conference on the consolidated cases on **Monday, August 3, 2026** at **1:30 p.m.** in **Courtroom 2105, 75 Ted Turner Drive, SW Atlanta, GA 30303-3309.**

It is **FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that, in

*Roland*, No. 1:22-cv-01692-VMC, the Court will hold a jury trial on the consolidated

cases beginning on **Tuesday, August 18, 2026** at **9:30 a.m.** in **Courtroom 2105, 75**

**Ted Turner Drive, SW Atlanta, GA 30303-3309.**

    **SO ORDERED** this 20th day of April, 2026.

_____

Victoria Marie Calvert
United States District Judge